FIRST NATIONAL BANK OF BELLEVUE, APPELLEE, v. GEORGE P. ROSE ET AL., APPELLANTS.

249 N. W. 2d 723

Filed January 19, 1977. No. 40563.

George P. Rose, pro se.

Waldine H. Olson for Schmid, Ford, Mooney, Frederick & Caporale, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is the second appearance of the case before this court, and it involves an action brought by appellee, plaintiff below, in the District Court to recover a deficiency judgment for the balance due on a promissory note executed by defendants George P. Rose and George Rose Sodding and Grading Corporation after a repossession sale of the collateral security by plaintiff First National Bank of Bellevue. The opinion in the first appeal will be found at 188 Neb. 362, 196 N. W. 2d 507 (1972).

After trial before a jury in January 1971, the District Court for Douglas County granted plaintiff's motion for a directed verdict, and awarded the plaintiff $9,422.88 plus interest. On appeal, this court reversed and remanded the cause for further proceedings on the ground that factual questions relevant to the issue of whether plaintiff's disposition of the collateral security was commercially reasonable should have been submitted to the

jury. First Nat. Bank of Bellevue v. Rose, *supra*. Retrial of the case commenced on October 21, 1975, before a District Judge sitting without a jury. The court entered judgment against the defendants in the sum of $3,033.82, plus interest and costs, after determining the total debt and expenses for which the defendants were liable; and after granting defendants credit for repayments on the loan received by plaintiff, and for the value of the collateral that plaintiff had repossessed and sold. Defendants have now appealed, contending that the District Court erred, in part, in assessing the value of the collateral security sold, in finding that the disposition of the collateral security was commercially reasonable, and in sustaining plaintiff's objection to questions regarding certain promissory notes executed by the defendants in favor of the plaintiff. We reverse and remand.

Defendants raise numerous assignments of error in this appeal, but in light of our disposition of the case we find it necessary to discuss only the issue of whether the plaintiff provided Rose adequate notice of the disposition of the collateral which the plaintiff repossessed and sold. The facts relevant to this issue are as follows. On April 19, 1969, Rose executed a promissory note in favor of the plaintiff, hereinafter referred to as the bank, in the sum of $22,200. This note represented a consolidation of two prior loans Rose had received from the bank and an additional $3,000 cash advance which Rose needed as working capital. Rose signed this note as president of George Rose Sodding and Grading Corporation, and also signed his own name as an individual. The note was secured by equipment which the corporation owned, and which had been security for the prior loans then consolidated into the April 19, 1969, note. Additional security which is unimportant to the disposition of this case was also provided in the note.

Rose subsequently defaulted on the loan after three repayments of $2,000 each. The bank notified Rose of

his default on September 8, 1969, and initiated a replevin action against Rose in October 1969. The collateral security was then located and repossessed, and in total the bank took possession of 12 items of equipment. One item of collateral equipment was never located.

On November 12, 1969, the bank notified Rose by certified mail that it had obtained bids on the repossessed equipment in an aggregate amount of $10,268.50, and that the collateral would be disposed of "at private sale * * * November 17, 1969." The notice advised Rose to furnish to the bank any bids which he may have on any or all the equipment. The $10,268.50 bid which the bank had received was from Robert Kouba Construction Company. On November 17, 1969, Rose' attorney brought to the bank another bid from Ernest C. Turley. This bid did not cover all the items of equipment, was much lower than the Kouba bid on the items it did cover, and was therefore rejected.

For some reason not disclosed in the record, the Kouba bid was never consummated, and the bank proceeded to sell the repossessed equipment item by item in a series of private sales. These sales commenced on November 20, 1969, and the last one was completed on June 1, 1970. Three of the items were never actually sold, but the bank credited Rose for the estimated value of these items. In total, the bank credited Rose for $10,268.50.

Rose was not notified of any of these private sales, which were made after the bank contacted 10 to 20 construction firms in the area and requested them to examine the equipment and bid on it. Of the nine items actually sold, two were sold on November 20, 1969; two were sold on November 25, 1969; one was sold on December 16, 1969; three were sold on February 27, 1970; and one was sold on June 1, 1970. Thus there was a total of five separate private sales. Each of the five sales was made to a different purchaser.

The money received from these sales was insufficient to cover the balance due on the promissory note, and

the bank brought this action for a deficiency judgment under section 9-504(2) of the Uniform Commercial Code. There was no dispute that Rose had defaulted on the note. The only evidence adduced at trial as to notice of the sales was that the bank had, on November 12, 1969, notified Rose of the Kouba bid and of its intention to dispose of the collateral at private sale on November 17, 1969. The trial court did not specifically make findings on the issue of whether this was sufficient notice under the provisions of the Uniform Commercial Code.

The trial court found generally that the repossession sales were conducted in good faith and in a commercially reasonable manner. The court, however, did specifically find that one of the sales of three items of equipment was not made in a commercially reasonable manner due to inadequancy of the sale price, and awarded Rose an additional $1,400 credit on these three items. The court also made a minor modification on the credit allowed to Rose on another item of equipment, and awarded Rose a total of $11,720.89 credit on the collateral, as compared to the $10,268.50 credited to Rose by the bank. After allowance for all credits and debits on the promissory note, the trial court found the balance due to be $3,033.82, and awarded the bank this amount, with interest thereon from January 5, 1972.

Section 9-504(3), U.C.C., provides among other things: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, * * *.*" (Emphasis supplied.) It is clear that under this section a secured party has the duty to provide the debtor with reasonable notice of the intended disposition. Bank of Gering v. Glover, 192 Neb. 575, 223 N. W. 2d 56 (1974). In the recent case of DeLay First Nat. Bank & Trust Co. v. Jacobson Appli-

ance Co., 196 Neb. 398, 243 N. W. 2d 745 (1976), we reaffirmed the holding of Bank of Gering v. Glover, *supra,* and further stated that "the burden of proof is on the secured party to prove compliance with the statutory requirements of notice and reasonableness of notice." Under the principles set forth in the above cases, the District Court judgment in the present case must be reversed for the reason that the bank failed to provide Rose with adequate notice of the disposition of collateral.

In DeLay, we found that to constitute reasonable notice of a private sale, the notice should be sent in such time that the debtors would ordinarily have a minimum of 3 business days to arrange to protect their interest.

In DeLay we held that the failure to give proper notice of the sales of the collateral is an absolute bar to the recovery of a deficiency judgment, citing Bank of Gering v. Glover, *supra.*

The notice given in this case did not comply with the requirements set forth in DeLay. It is undisputed the bank sent notice to Rose by certified mail on Wednesday, November 12, 1969, that it had received an aggregate bid on the collateral and intended to dispose of it by private sale on Monday, November 17, 1969. Although the record does not show when Rose actually received the notice, it appears that Rose probably had less than 3 business days to arrange to protect his interests since the notice was not mailed until some time on November 12, 1969. The mailing of notice on Wednesday of a sale to be held the following Monday would appear to make it difficult, if not impossible, for Rose to arrange financing or take other steps to protect his interest in the collateral, particularly if banks were closed on Saturday. In any event, the ordinary 3-day rule set forth in DeLay is a minimum requirement, and such notice is not necessarily sufficient in all cases. The purpose of giving reasonable notice to a debtor is to insure that he will have sufficient time to take appropriate steps

to protect his interest. See Comment 5, § 9-504, U.C.C. In this case we do not believe that Rose was given sufficient time to protect his interests, and we find that the notice that was given by the bank was unreasonable. See White & Summers, Uniform Commercial Code, § 26-10, pp. 986, 987 (1972).

A deficiency judgment may not be awarded to the bank in this case because it failed to sustain its burden of proof that sufficient notice of the disposition of collateral was given to Rose. Therefore the judgment of the District Court must be reversed, and the cause remanded to the District Court with directions to dismiss the petition.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I respectfully dissent for the reasons stated in my dissent in DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co., 196 Neb. 398, 243 N. W. 2d 745.

McCOWN, J., joins in this dissent.

NEWTON, J., dissents.