STANLEY W. LEVERS AND THORNTON G. COLBY, APPELLANTS, v. RIO KING LAND AND INVESTMENT COMPANY, A PARTNERSHIP COMPRISED OF B. T. ROCCA AND C. M. ROCCA, INDIVIDUALLY AND AS PARTNERS, RESPONDENTS.

No. 8262

March 9, 1977 560 P.2d 917

*Hale & Belford,* and *J. Stephen Peek,* Reno, for Appellants.

*John J. McCune, Virgil D. Dutt,* and *Paul J. Williams,* Reno, for Respondents.

**OPINION**

By the Court, BATJER, C. J.:

Appellants gave respondents a $35,000 promissory note as consideration for ranch supplies purchased from respondents.

Respondents properly perfected a security interest in the supplies, and, upon default by appellants, respondents disposed of the supplies at a non-judicial sale pursuant to NRS 104.-9504(1).[1] At the sale, respondents purchased the collateral for $100 and subsequently resold it for $10,000. In a consolidated action, the district court set aside the sale but awarded respondents $25,000, which was the difference between the amount due on the note and the amount obtained by respondents on resale. We must now determine (1) whether respondents gave appellants reasonable notification of the sale, (2) whether respondents held the sale in a commercially reasonable manner, and if not, (3) whether respondents are entitled to a deficiency judgment. Even though we conclude the sale was conducted in a commercially unreasonable manner, and without sufficient notice to appellants, we affirm the judgment of the district court, except that portion setting aside the sale.

1.  With certain exceptions not here applicable, a secured party must give the debtor ". . . reasonable notification of the time and place of any public sale . . ." before disposing of the debtor's property to satisfy a perfected security interest. NRS 104.9504(3). Although our uniform commercial code is silent regarding the length of time such notification should precede the date of sale, it should at least ". . . be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests . . ." in the collateral. U.C.C. § 9–504, Comment 5; see also Mallicoat v. Volunteer Finance & Loan Corp., 415 S.W.2d 347 (Tenn.App. 1966).

---

[1] NRS 104.9504(1) provides:

"1.  A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the article on sales (article 2). The proceeds of disposition shall be applied in the order following to:

"(a) The reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party.

"(b) The satisfaction of indebtedness secured by the security interest under which the disposition is made.

"(c) The satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand."

The secured party has the burden of establishing compliance with the "reasonable notification" requirement. Leasing Associates, Inc. v. Slaughter & Son, Inc., 450 F.2d 174 (8th Cir. 1971); Tauber v. Johnson, 291 N.E.2d 180 (Ill.App. 1972). Here, this burden has not been met. Respondents sent notice only to appellant Levers by letter, on May 25, 1972, informing him that the sale would be held on June 2, 1972.[2] Before the sale date, appellants moved to temporarily restrain the sale to protect their interest in the collateral, but respondents had conducted the sale before the court's order could be served. In light of these facts, respondents failed to satisfy the reasonable notification requirement of NRS 104.9504(3).[3]

2.    In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral. NRS 104.9504(3); Jones v. Bank of Nevada, 91 Nev. 368, 535 P.2d 1279 (1975). Every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable. NRS 104.-9504(3). Although the price obtained at the sale is not the sole determinative factor, nevertheless, it is one of the relevant factors in determining whether the sale was commercially reasonable. First National Bank of Bellevue v. Rose, 196 N.W.2d 507 (Neb. 1972). A wide discrepancy between the sale price and the value of the collateral compels close scrutiny

---

[2]It is to be noted that the Memorial Day weekend intervened between the mailing and the sale.

[3]NRS 104.9504(3) provides:

"3.    Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

into the commercial reasonableness of the sale. In Re Zsa Zsa Limited, 352 F.Supp. 665 (S.D. N.Y. 1972); Mercantile Financial Corp. v. Miller, 292 F.Supp. 797 (E.D. Penn. 1968). This is especially true where, as here, the secured party purchases the collateral and subsequently resells it for a vastly greater amount than was credited to the debtor.

Respondent C. M. Rocca and one Maness, a former employee of Rocca, were the only people who attended the sale. There is no evidence that respondents publicized the sale in any manner or otherwise tooks steps to insure the best price possible would be obtained for the benefit of the debtor. See: Foster v. Knutson, 527 P.2d 1108 (Wash. 1974). C. M. Rocca placed the only bid at the sale and purchased the collateral for $100. Subsequently, respondents sold the collateral to a third party for $10,000. Under these circumstances, we conclude the sale was not commercially reasonable.

3. Despite the failure to conduct a commercially reasonable sale with reasonable notification to appellants, respondents contend they are entitled to a deficiency judgment based on the difference between the amount owing on the debt and the purchase price of the collateral at the statutory sale. Jurisdictions are split on whether a creditor who fails to comply with the uniform commercial code is precluded from recovering a deficiency judgment. See: White & Summers, Uniform Commercial Code § 26–15 (1972). Creditor misconduct should not be an absolute bar to a deficiency. Instead, when a creditor is derelict in complying with the code's provisions, it will be presumed the collateral had a fair market value equal to the amount of the debt, and no deficiency will be permitted unless the creditor produces evidence to establish the reasonable amount that the collateral would have sold for at a proper sale. Clark Leasing Corp. v. White Sands Forest Prod., Inc., 535 P.2d 1077 (N.M. 1975); Universal C.I.T. Credit Co. v. Rone, 453 S.W.2d 37 (Ark. 1970). See also: Notes, A Creditor's Right to a Deficiency Judgment Under Article 9 of the Uniform Commercial Code, 42 Brooklyn L.Rev. 56 (1975).

Here, there is substantial evidence that the collateral had a fair market value of $10,000. Therefore, the district court correctly awarded respondents $25,000, the difference between the balance owed on the promissory note, and the fair market

value of the collateral. However, because appellants have received complete relief, respondents' misconduct will not vitiate the statutory sale so as to defeat the third party's title in the collateral subsequently purchased from respondents. That portion of the judgment setting aside the sale is therefore reversed.

We need not consider appellants' other contentions challenging various findings by the district court because they are supported by substantial evidence. Alves v. Bumguardner, 91 Nev. 799, 544 P.2d 436 (1975).

ZENOFF, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.