## 49318. LUXUREST FURNITURE MANUFACTURING COMPANY v. FURNITURE WAREHOUSE SALES, INC. et al.

PANNELL, Presiding Judge.

Appellant, hereafter referred to as Luxurest Furniture, is a Colorado corporation, owned by a'Mr. and Mrs. Theodore Yaron, which manufactures upholstered furniture marketed nationwide to retailers. Luxurest Sales Company is another corporation owned solely by Mrs. Yaron. Both corporations are operated from a single office by Mr. Yaron. Appellee Furniture Warehouse

Sales, Inc., hereafter referred to as FWS, is a Georgia corporation, owned and operated by appellee Gurwitch in the retail furniture business. New furniture is marketed by appellant at prices set by widely distributed price lists. Repossessed furniture is a changed commodity and is resold to a different set of buyers and at widely fluctuating prices.

In July, 1972, Mr. Gurwitch and Mr. Yaron agreed that FWS would purchase various articles of furniture. As a new customer, FWS received the goods at a discount. Payment was accomplished by the execution of two notes in favor of appellant and secured by the furniture purchased. These notes provided inter alia for the collection of "——% attorney's fees" if not paid when due. Mr. Gurwitch signed the notes for FWS and individually as co-maker. In due course FWS defaulted. Dispute exists as to the amount due on the notes; appellant contending the sum to be $11,662.68; appellee, $10,356.34. It was agreed that Luxurest Furniture would take possession of the furniture under the security agreement and this was accomplished about May 1, 1973, less items on the floor marked sold. The repossessed furniture, valued at $7,262 per initial invoice, was transported to Denver, Colorado. Mr. Gurwitch understood that the repossession would constitute accord and satisfaction for all amounts due; Mr. Yaron denied any such understanding. The day of repossession, appellant brought his suit for a deficiency judgment of $7,001.82, representing a $1,200 transportation cost, attorney fees and an estimated amount the goods would bring at a future sale. The latter based on an assumption that the goods would bring 20% less than the original invoice cost.

On May 7, 1973, appellant notified appellees that the repossessed furniture would be privately disposed of by sale, lease or otherwise after May 22, 1973. In the interim appellant contacted a former furniture store owner, who indicated that he might consider buying it if a large discount was offered. No sale ensued. No notice of public sale was given. Appellee took no action with respect to the notice of private sale, claiming the press of bankruptcy proceedings occupied his time. At the

ultimate disposition, Mr. Yaron, as an owner and operator of appellant corporation, accepted his own bid as operator of Luxurest Sales, and the furniture was sold at private sale on May 25, 1973. This sale price was for the re-sale value of the repossessed furniture originally estimated by Mr. Yaron on May 1, 1973, and used by him to determine the "deficiency" in the instant case. Luxurest Sales then sold the furniture in the ensuing two or three months to undisclosed purchasers and for undisclosed prices, but at no loss.

The trial judge, sitting without a jury, entered findings of fact, conclusions of law, and issued an order in favor of the defendant, Mr. Gurwitch, and appeal followed. *Held:*

1. The parties agree and the facts disclose that we are concerned with the disposition of collateral at private sale. However, every aspect of such disposition, including the method, manner, time, place and terms must be commercially reasonable. Also, the secured party may only buy at private sale if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Code § 109A-9—504 (3).

The first question for resolution is whether the private sale was commercially reasonable. While the term "commercially reasonable" ultimately may be one of law, Carter v. Ryburn Ford Sales, Inc., 248 Ark. 236 (451 SW2d 199); time and method may involve questions of fact. California Airmotive Corp. v. Jones, 415 F2d 554 (CA6 1969). In the instant case, appellant had already decided what the repossessed property would bring on resale. His testimony as to resale price, while admissible, is self-serving. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 626 (64 SC 724, 88 LE 967). Mr. Yaron's bid, based on his own estimate of resale value, and his acceptance of his own bid, albeit wearing his other hat as owner manager of Luxurest Furniture, only emphasizes the self-serving aspect. Time was not of the essence, yet Mr. Yaron apparently only contacted one dealer to attempt a sale. This cannot be held to be due diligence in attempting to get the best price obtainable and it cannot be said that the sale was commercially

reasonable. Having failed to do so, he is liable to the debtor for the difference between the price obtained and the price he could have obtained by the exercise of such diligence. See A to Z Rental, Inc. v. Wilson, 413 F2d 899 (CA 10).

The second question is whether appellant was authorized to buy at private sale under the prevailing facts. We hold that he was not. The repossessed furniture was not of a type customarily sold in a recognized market. As we construe that term, the collateral must be one where value at any given time can be readily ascertained, as in the case of stocks and bonds or other negotiable instruments. See Norton v. Nat. Bank of Commerce of Pine Bluff, 240 Ark. 143 (398 SW2d 538). Further, at trial, appellant conceded that the furniture upon repossession was a changed commodity. Reliance on widely distributed price quotations for new furniture patently has no application to the re-sale of the collateral here. See Carter, supra. The collateral here was not sold in a recognized market nor was it of a type which is the subject of widely distributed standard price quotations and private sale was not authorized by Code Section 109A-9—504 (3). The trial court did not err in finding a violation of the Code and that appellee was entitled to full credit for the goods repossessed.

2. It is enumerated that the trial court erred in not awarding judgment in favor of the appellant for the amount sued for less the sum appellee was damaged by the appellant's improper sale. We believe this complaint is meritorious. The defendant expressly promised to pay the purchase price of the property sold. This created a personal debt. Both parties, per security agreement, agreed that the seller had the right to foreclose and sell the property. It remains then that the foreclosure of the security device did not eliminate the defendant's personal obligation to pay the debt which he contracted to pay. The defendant remained liable for the difference between the contract price and the net proceeds realized from a proper foreclosure sale, plus or minus any payments or charges properly applicable to the transaction. Clearly, if the seller can repossess the property after obtaining a judgment for the purchase

price, he can also first sell the property and then maintain an action for the balance of the purchase price. See *Hopkins v. West Publishing Co.,* 106 Ga. App. 596, 600 (127 SE2d 849). It is obvious in the instant case that the defendants owed either $11,660.68, or a lesser amount at the time foreclosure occurred. That fact was not resolved by the trial court. However, we are of the opinion that failure to comply with Code § 109A-9—504 (3) is not fatal to the entire claim of the appellant. Investors Acceptance Co. of Livingston v. James Talcott, Inc., 61 Tenn. App. 307 (454 SW2d 130), cert. den. Tenn. Sup. Ct. 1970. See also Carter, supra, p. 203. Appellant still was entitled to receive the contract price for the furniture sold to appellee over and above the dollar amount of the furniture repossessed and which constitutes the deficiency in this case. To this extent, the trial court erred.

3. The appellee contends that there was accord and satisfaction raised in this case and we should construe it in his favor. While there is testimony to this effect in the record, the trial court made neither findings of fact nor conclusions of law in this regard and, therefore, the matter is not properly before us on appeal.

4. The case must be reversed for the trial court to determine the issue of accord and satisfaction and, if then pertinent, the amount due appellant.

*Judgment reversed with direction. Quillian and Webb, JJ., concur.*

ARGUED MAY 9, 1974 — DECIDED SEPTEMBER 4, 1974 — REHEARING DENIED SEPTEMBER 24, 1974 — ■

*Lazarus, Stokes & Kaplan, Marion B. Stokes, John H. Watson,* for appellant.

*Nall, Miller & Cadenhead, Gerald A. Friedlander, James C. Pratt,* for appellees.